2017 PA Super 160

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARTEE LINARD MAURICE GAUSE | |
| Appellant | No. 151 MDA 2015 |

Appeal from the Judgment of Sentence December 2, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0008850-2013

BEFORE: BENDER, P.J.E., BOWES, J., PANELLA, J., LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., MOULTON, J., and RANSOM, J.

OPINION BY LAZARUS, J.:                                    **FILED MAY 24, 2017**

Artee Linard Maurice Gause appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, following his convictions of driving under the influence of alcohol or controlled substance ("DUI") – general impairment,[1] DUI – controlled substance,[2] and driving

---

[1] 75 Pa.C.S.A. § 3802(a)(1). Section 3802(a)(1) provides:

> **(a) General impairment.--**
>
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

without stop lights (brake lights) in violation of period for requiring lighted lamps.[3]   After careful review, we vacate the judgment of sentence and discharge Gause.

The trial court summarized the facts of this case as follows.

[O]n September 25, 2013, at around 1:20 in the morning, Officer [Erika] Eiker encountered a vehicle lacking illuminated taillights. [[4]] During the ensuing stop, the officer asked [Gause] for his license and registration and questioned where [Gause] was coming from. [Gause] provided the requested items without any fumbling and informed the officer that he was traveling from a friend's home[.]   Officer Eiker smelled alcohol and [Gause] stated that he had consumed one 12-ounce can of beer. [Gause] then completed field sobriety tests with varying levels of success.[[5]]   On cross-examination, defense counsel elicited from

(Footnote Continued) ——————————

[2] 75 Pa.C.S.A. §  3802(d)(2). Section 3802(d)(2) provides:

> **(d)  Controlled  substances.**--An  individual  may  not  drive, operate  or  be  in  actual  physical  control  of  the  movement  of  a vehicle under any of the following circumstances:
>
> > (2)  The  individual  is  under  the  influence  of  a  drug  or combination  of  drugs  to  a  degree  which  impairs  the individual's  ability  to  safely  drive,  operate  or  be  in  actual physical control of the movement of the vehicle.

[3] 75 Pa.C.S.A. § 4302(a)(1).

[4] At the hearing on Gause's omnibus pretrial motion, Officer Eiker stated that Gause's brake lights were functioning, but not his taillights.  N.T. Omnibus Pretrial Hearing, 7/29/14, at 15.

[5] Officer Eiker stated that she directed Gause to perform certain standard field sobriety tests.  The tests included the Horizontal Gaze Nystagmus (HGN), walk and turn, one-leg stand, and the Romberg balance tests. Gause showed no impairment on the HGN test.  On the walk-and-turn, he showed some impairment.  On the one-leg stand, Gause did not show sufficient clues for DUI impairment.  On the Romberg balance test, while directed to close
(Footnote Continued Next Page)

Officer Eiker that during the encounter she neither smelled nor saw marijuana. Moreover, the officer testified that [Gause's] speech was not slurred and that, outside of the field sobriety tests, [Gause's] balance and coordination were fine. Officer Eiker went on to testify that she gives the Romberg Test when she suspects marijuana usage because she associates eyelid tremors, as in this case, with marijuana usage. . . . [T]hough [Gause] submitted himself to a drug recognition evaluation, he refused chemical testing.

Trial Court Opinion, 4/16/15 at 5-6 (citations to record omitted).

Following trial, a jury convicted Gause of the aforementioned charges. The trial court merged the DUI convictions for sentencing purposes and sentenced Gause to a term of 5 years of intermediate punishment, including 45 days to be served in county prison and 90 days of house arrest, and imposed a $1,500 fine, plus costs of prosecution. On the summary offense of driving without brake lights, the court imposed a $25 fine, plus the costs of prosecution. Gause filed post-sentence motions, which the trial court denied. This timely appeal followed.

Gause raises the following issues for our review:

1. Whether Officer Eiker's opinion testimony that body tremors and eyelid tremors are indicative of marijuana impairment should have been excluded?

*(Footnote Continued)* ───────────

his eyes and lean slightly backward, Gause misjudged the passing of 12 seconds for 30 seconds, but there was no testimony that this indicated impairment. *See* N.T. Omnibus Pretrial Hearing, 7/29/14, at 10-14; N.T. Trial, 10/9/14, at 72. Additionally, at trial, Officer Eiker stated that she did ask Gause if he had any physical limitations and he told her that "he had been shot in one of his legs . . . ten years ago[.]" *Id.* at 68.

2. Whether Officer Eiker should have been denied the ability to testify as to her opinion that body tremors and eyelid tremors are indicative of marijuana impairment when the trial court ruled prior to the beginning of trial that the Commonwealth's witnesses could not render an opinion?

3. Whether Officer Eiker's and Officer George's testimony regarding eyelid and body tremors should have been excluded even if they did not render an opinion because the testimony was irrelevant without their opinion?

4. Whether there was insufficient evidence to support the [j]ury's finding of guilt on count 2, DUI-[c]ontrolled [s]ubstance, because the Commonwealth failed to present sufficient evidence that Mr. Gause was incapable of safely operating an automobile because of drug consumption?

5. Whether there was insufficient evidence to support the [j]ury's finding of guilt on count 1, DUI, [g]eneral [i]mpairment, when Officer George testified that he had excluded alcohol as a factor of impairment?

6. Whether the [j]ury's verdict as to count 2 is against the weight of the evidence when there was no testimony as to the drug(s) that Mr. Gause was supposedly impaired by?

7. Whether the verdict as to count 1 is against the weight of the evidence when Officer George had specifically excluded alcohol impairment?

Appellant's Brief at 6-7.

Gause first argues that the trial court committed reversible error when it permitted Officer Eiker to offer her opinion that eyelid and body tremors are indicative of marijuana impairment. We agree. Officer Eiker's lay opinion was incompetent and the trial court should have excluded it as inadmissible under Pennsylvania Rule of Evidence 701.

Prior to the start of trial, the court ruled that Officer Eiker could testify to her observations of body and eyelid tremors "but not to any conclusions

as to what those tremors signified." N.T., 10/9/14, at 13. During trial, the court reversed its earlier ruling and, over defense counsel's objection, permitted Officer Eiker to attribute Gause's body and eyelid tremors to marijuana impairment. Officer Eiker testified that, in her opinion, Gause was under the influence of a controlled substance, and that she formed this opinion, in part, on body and eyelid tremors:

> Q: [B]ased on your training, your experience, your education, your observations of [Gause], performance on those tests, did you form an opinion at the time of your contact with [Gause] whether or not you believed he was impaired?
>
> A: Yes. At the time of my contact with him, just, you know, the totality of everything, you know, his behavior, the body tremors, the eyelid tremors, the clues on the walk and turn, you know, his poor perception of time with the Romberg balance test, and also *the very strong presence of eyelid tremors during that test*.

*Id.* at 75-76 (emphasis added). On re-direct, Officer Eiker testified that "if they have tremors in the eyelids, it's a general indicator that the individual, you know, has ingested marijuana [.]" *Id.* at 103.

Gause submitted to a drug evaluation test, performed by Officer Scott George. Officer George also administered the Romberg balance test; this time, Gause estimated the passage of 30 seconds at the 19-second point. *Id.* at 116-117. During the Romberg balance test, Gause exhibited eyelid and body tremors. Office George testified: "When his eyes were closed, he had distinct and sustained eyelid tremors[.]" *Id.* He also administered the walk and turn test and the one-leg stand test. Gause passed the one-leg stand test, but stepped off the imaginary line in the walk and turn test.

Officer George acknowledged that Gause's leg injury could affect his ability to perform the walk and turn test and the one-leg stand test, and thus could affect the reliability of those tests. *Id.* at 131-32. Officer George stated that he believed Gause was "impaired by both a drug and the alcohol that he had in his system[,]" *id.* at 120, but acknowledged on cross-examination that Gause was not over the legal limit of .08"[6] and also acknowledged his preliminary hearing testimony that "if a subject is impaired by alcohol, we don't do drug evaluations at that point[.]" *Id.* at 124-25.

The trial court recognized in its Pa.R.A.P. 1925(b) opinion that it was error to admit Officer Eiker's opinion testimony as to whether body tremors and eyelid tremors are indicative of marijuana usage, and that it was error to alter the pretrial ruling that precluded that opinion during trial. The court stated:

> Turning to Officer Eiker's opinion testimony that [Gause] was marijuana impaired, we immediately observe that the Superior Court has very clearly stated that there is "a need for expert testimony in the area of marijuana." **Commonwealth v. DiPanfilo**, 993 A.2d 1262, 1267 (Pa. Super. 2010). However, in [**DiPanfilo**], the Superior Court also said that expert testimony is *not* required in every marijuana case. *Id.* This dichotomy was clarified in a footnote, which states the following:
>
> > [I]f a police officer stopped a driver who was driving erratically, and the driver then rolled down his window and greeted the officer through a cloud of marijuana smoke, showing the typical signs of heavy marijuana use, it would be difficult to imagine that expert testimony would be

---

[6] No chemical testing was performed.

> necessary to establish the link between erratic driving and
> the driver's marijuana use.
>
> ***Id.*** at n. 5.

Trial Court Opinion, 4/16/15, at 5. The trial court went on to observe, correctly, that an expert is required to render an opinion as to marijuana impairment unless the circumstances are so telling of recent marijuana use as to form a clear connection between marijuana use and impairment. ***Id.*** The court also observed, again correctly, that the facts presented in the instant case were within the ***DiPanfilo*** holding that an expert is necessary to present conclusions to a jury about the effects of marijuana on a defendant. The court stated:

> By the officer's own testimony, the facts of our case do not align with, nor closely resemble, the hypothetical sketched out by the ***DiPanfilo*** [C]ourt in [its] footnote. In the officer's candid and credible testimony, we did not hear evidence of erratic driving or hear about billowing marijuana smoke. With the exception of his eyelid tremors and some failure at field sobriety tests, the officer did not testify about anything else that would indicate marijuana usage so recent as to obviate the necessity of an expert to explain whether [Gause] would have been under the influence of marijuana.

Trial Court Opinion, ***supra*** at 7.

Our standard of review is well settled: "The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." ***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015) (citation omitted). Pursuant to Pennsylvania Rule of Evidence

701, Opinion Testimony by Lay Witness, lay witness testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; **and**

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701 (emphasis added). Our cases further hold that lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training. *Commonwealth v. Counterman*, 719 A.2d 284 (Pa. 1998). *Cf. Commonwealth v. Jones*, 121 A.3d 524 (Pa. Super. 2015) (police officer's smelling burnt marijuana emanating from defendant's vehicle during traffic stop provided reasonable grounds to request chemical testing).

In *Commonwealth v. Griffith*, 32 A.3d 1231 (Pa. 2011), the Pennsylvania Supreme Court declined "to read into subsection 3802(d)(2) a mandatory requirement for expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination." *Id.* at 1238. In *Griffith*, the criminal complaint was based on an eyewitness's account Griffith driving in a reckless and dangerous manner, a police officer's observations of Griffith, including her failure to pass three field sobriety tests, and blood tests indicating the presence of Diazepam (valium) and nordiazepam. *Id.* at 1233. Additionally, Griffith acknowledged that she had taken a different

prescription medication, specifically, Soma 350, on the morning of the incident, and police found prescription pill bottles for Soma in the open center console of Griffith's vehicle. *Id.*

The *Griffith* Court stated: "Depending on the specific facts and circumstances, expert testimony may be helpful, *or perhaps even necessary*, to prove causation under subsection 3802(d)(2)[.]" *Id.* (emphasis added). Accordingly, the question of whether expert testimony is necessary in such cases "must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue . . . but also the nature and overall strength of the Commonwealth's evidence[.]" *Id.* at 1239. In essence, the Court determined that expert testimony is not necessary to establish impairment under subsection 3802(d)(2) where there exists other independent evidence of impairment. In our opinion, the facts and circumstances of the case before us clearly fall within the "expert testimony necessary" classification.

Notably, the Commonwealth provided no evidence that Gause had recently ingested marijuana. On the contrary, Officer Eiker testified that Gause had stopped at a lighted intersection, with his headlights and turn signal properly activated, and that she stopped him after he had turned and she saw that his taillights were not illuminated. N.T. Jury Trial, 10/9/14, at 84-85.[7] Officer Eiker testified that when she activated her lights, Gause

---

[7] We have viewed Officer Eicker's dashboard camera video, which confirms these observations.

properly signaled and pulled over immediately to the curb. Gause provided his license, registration and proof of insurance without fumbling. **Id.** at 85-87. There was no evidence that an odor of marijuana emanated from his person or from his vehicle at the time he was stopped. **Id.** at 88. There was no testimony that Gause's eyes were bloodshot. Nor did Officer Eiker testify that she discovered any physical evidence of recent marijuana usage. Further, there was no admission from Gause that he had recently smoked marijuana, nor was there eyewitness testimony to establish recent ingestion of marijuana.

Rather, to support its case, the Commonwealth presented Officer Eiker's testimony that Gause exhibited "eye tremors," in particular when his eyes were closed during the Romberg balance test. Although Officer Eiker could testify as to her observations of an apparent physical condition, a qualified expert is required to provide the connection between the symptoms observed and the drug allegedly influencing the defendant's driving. **See DiPanfilo**, **supra**; **see also Commonwealth v. Allison,** 703 A.2d 16 (Pa. 1997) (lay witness could not testify regarding "split and opened" condition of complainant's hymen in absence of qualified expert testimony to explain significance of these personal observations); **Commonwealth v. Yanoff**, 690 A.2d 260 (Pa. Super. 1997) (murder defendant attempted to elicit objectionable opinion by asking police officer whether victim had appeared to be under influence of drugs; officer had not been qualified to render such opinion); **Commonwealth v. Yedinak**, 676 A2d 1217, 1222 (Pa. Super.

1996) (Beck, J., dissenting) ("[A]fter a proper foundation has been laid, a lay witness may testify as to his or her observations. However, a qualified expert is required to provide the connection between the symptoms observed and the drug allegedly influencing the defendant's driving.").

It is clear to this Court that Officer Eiker's observation of "eyelid tremors" is not the typical and obvious indicia of marijuana use, such as the distinct odor of burnt marijuana emanating from the person or the vehicle. Further, it is eminently clear that attributing body or eyelid tremors to marijuana use requires specialized knowledge within the scope of Pa.R.E. 702. Unlike staggering, stumbling, glassy or bloodshot eyes, and slurred speech, the "ordinary signs of intoxication discernable by a layperson," eye tremors are *not* an ordinary sign of ingestion of a controlled substance, in particular, marijuana. As the trial court acknowledged, Officer Eiker's testimony as to her observations **did not obviate the necessity of an expert** to explain whether "eye tremors," or "body tremors," would indicate that someone was under the influence of marijuana and that this impaired his ability to safely drive, in violation of section 3802(d)(2).[8] ***See Di***

---

[8] Officer Eiker acknowledged on cross-examination that there are other causes of eye tremors. N.T. Trial, ***supra*** at 105. According to the Mayo Clinic, eye tremors, or eye twitches, are also an indication of stress, bright light, caffeine excess, fatigue, irritation of the eye surface or inner eyelids, physical exertion, smoking, wind and alcohol use. Additionally, eye tremors can also be caused by various medical conditions, including dry eyes, glaucoma, blepharitis, corneal abrasion, and Tourette's syndrome. ***See***
*(Footnote Continued Next Page)*

***Panfilo***, ***supra***; ***cf. Commonwealth v. Jones,*** 121 A.3d 524 (Pa. Super. 2015) (as matter of first impression, police officer's smelling strong, distinct odor of burnt marijuana emanating from vehicle during traffic stop provided reasonable grounds, by itself, to request chemical testing); ***Commonwealth v. Etchison***, 916 A.2d 1169 (Pa. Super. 2007). Because it required specialized knowledge, Officer Eiker's testimony was inadmissible as "lay opinion." ***See*** Pa.R.E. 701.[9]

The trial court, however, determined that this was harmless error. The trial court stated that it did "not believe that defense counsel, in this case, relied to his detriment on our pretrial ruling. Rather than a finding that there was prejudice, at most, we believe there may have been harmless error." Trial Court Opinion, 4/16/15, at 10-11. We disagree.

Officer Eiker's testimony regarding body and eye tremors was central to the Commonwealth's case pertaining to marijuana impairment, as it was the only factor she attributed to marijuana impairment. Without expert testimony to explain a connection, if any, the jury was permitted to engage in speculation that the observation of eye tremors indicates marijuana

*(Footnote Continued)* ————————

http://www.mayoclinic.org/symptoms/eye-twitching/basics/causes/sym-20050838 (last visited 3/20/2017).

[9] We do not address the issue of whether Officer Eiker could have testified as an expert in this case. Officer Eiker was not "qualified" as an expert pursuant to the Pennsylvania Rules of Evidence, which is required prior to admissibility. ***See*** Pa.R.E. 702. That issue, therefore, is not before us.

impairment, or, at the least, ingestion. We cannot characterize this as harmless. *See Commonwealth v. Williams*, 573 A.2d 536, 538-39 (Pa. 1990) ("Error is considered to be harmless where: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."), citing *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978). *See also Commonwealth v. Brennan*, 696 A.2d 1201, 1203 (Pa. Super. 1997) ("Harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict. If there is a reasonable probability that an error may have contributed to the verdict, the error is not harmless.") (internal citations omitted).

We conclude, therefore, that the trial court erred in admitting Officer Eiker's lay opinion testimony and this error was not harmless. Without this testimony, the evidence, even viewed in the light most favorable to the Commonwealth as verdict winner, did not support a conviction of DUI-controlled substance. In fact, there was a total lack of proof that Gause was under the influence of a drug to a degree that his ability to safely drive was impaired. Thus, the conviction under subsection 3802(d)(2) cannot stand.

*See Commonwealth v. LaBenne*, 21 A.3d 1287, 1289 (Pa. Super. 2011) (we view evidence admitted at trial in light most favorable to verdict winner to determine whether fact-finder could find every element of crime beyond reasonable doubt).

Additionally, we agree with Gause's argument that the evidence does not support a conviction under subsection 3802(a)(1).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*LeBenne*, 21 A.3d at 1289.

> Section 3802(a)(1) of the Vehicle Code provides:
>
> An individual may not drive, operate or be in actual physical control of the movement of a vehicle *after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle*.

75 Pa.C.S.A. § 3802(a)(1) (emphasis added). In order to prove a violation of this section, the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). To establish the second element, the Commonwealth must show that alcohol has

> substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Id.* (citations and footnote omitted).

As noted above, Officer Eiker stated that she did detect the odor of alcohol when she questioned Gause, and that he readily acknowledged he had consumed a 12-ounce Coors Light beer about a half hour earlier. She also acknowledged that Gause was cooperative and did not exhibit the typical indicators of alcohol impairment; there was no evidence of erratic driving, slurred speech, difficulty in handing over required documents, and no inability to stand without support. Officer Eiker stated that Gause answered her questions appropriately and correctly. Additionally, as far as

the "vehicle in motion" and "personal contact" phases, two of the three phases for determining general impairment, Officer Eiker testified that she did not notice any signs of impairment. N.T. Trial, *supra* at 89-90. The final phase, the field sobriety tests, yielded inconsistent results; however, both Officer Eiker and Officer George recognized that the reliability of those tests could be affected by leg injuries, such as Gause's.

Officer George testified that Gause was not "alcohol impaired," and he acknowledged that he would not perform a drug evaluation if, in fact, a subject is alcohol-impaired. Yet, Officer George testified that at the conclusion of his evaluation, he believed Gause was "impaired by *both a drug and the alcohol that he had in his system*." N.T. Jury Trial, 10/9/14, at 120 (emphasis added).

We have evaluated the entire record, and, viewing the evidence in the light most favorable to the Commonwealth, we conclude the Commonwealth did not meet its burden of proving beyond a reasonable doubt that Gause was under the influence of alcohol to such a degree as to render him incapable of safe driving. **Palmer**, **supra**. The evidence pertaining to marijuana should have been excluded, and after Office George stated that Gause was not "alcohol impaired," his conclusion that Gause was impaired by "both a drug and alcohol" is not supported by the record and must fail. Therefore, the evidence was insufficient to support a finding of DUI-general impairment under the statute. **Cf. Commonwealth v. Segida**, 985 A.2d at 880 (circumstantial evidence sufficient to establish guilt for DUI-general

impairment where defendant admitted to police officer at scene of one-vehicle accident that he had been drinking at local club and was driving when he lost control of his vehicle, officer smelled strong odor of alcohol coming from defendant's person and his breath, defendant performed very badly on field sobriety tests, blood alcohol test at hospital revealed very high blood alcohol content of 0.326 percent, and officer opined that "due to traffic on the road" it was "doubtful" that accident had occurred two or three hours or even ten minutes prior to his arrival on scene); *Commonwealth v. Teems*, 74 A.3d 142, 146 (Pa. Super. 2013) (evidence of guilt sufficient under section 3802(a)(1) where officer responding to call reporting disabled vehicle observed defendant sitting in driver's seat of vehicle, in lane of traffic, depressing brakes, car had lost its tires, defendant could not recall if he struck anything or when or where accident might have occurred, officer noticed strong odor of alcohol from defendant, defendant had red, glassy eyes and slurred speech, defendant failed to blow properly into portable alcohol breath test machine, and blood test at hospital revealed that he had BAC of .143); *Commonwealth Feathers*, 660 A.2d 90 (Pa. Super. 1995) (defendant's glassy eyes, slurred speech, odor of alcohol, inability to stand without support and failure of field sobriety tests was sufficient to support DUI conviction); *Commonwealth v. Kowalek*, 647 A.2d 948 (Pa. Super. 1994) (defendant's bloodshot eyes, slurred speech, strong odor of alcohol, difficulty in producing driver's license and registration and failure of field sobriety tests deemed sufficient to support DUI conviction). We conclude,

therefore, that the evidence was also insufficient to convict Gause under subsection (a)(1).

Based on our disposition of Gause's first five claims, we find it unnecessary to address Gause's final two issues challenging the weight of the evidence.

Judgment of sentence vacated.  Appellant is discharged.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2017