J-A09042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAMIAN WHITAKER | : | |
| | : | |
| Appellant | : | No. 1664 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 7, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005797-2018

BEFORE: NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                 **FILED APRIL 12, 2022**

Damian Whitaker (Whitaker) appeals from the judgment of sentence imposed in the Court of Common Pleas of Delaware County (trial court) after his jury conviction of misdemeanor Strangulation, Simple Assault, Possession of an Instrument of Crime (PIC) and Institutional Vandalism.[1] He argues that the evidence was insufficient to support his conviction. Counsel has filed an application to withdraw pursuant to **Anders v. California**, 386 U.S. 738 (1967). We grant counsel's application to withdraw and affirm the judgment of sentence.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2718(a), 2710(a)(3), 907 and 3307(a)(3), respectively. The jury acquitted Whitaker of the felony charges of Rape, 18 Pa.C.S. § 3123(a)(1), and Sexual Assault, 18 Pa.C.S. § 3124.

We take the following facts from the trial court's March 9, 2021 opinion and our independent review of the record.

**I.**

On October 24, 2018, the Commonwealth filed an Information charging Whitaker with the foregoing crimes. A three-day trial commenced on November 6, 2019. Brandi Gray, her fifteen-year-old son and Yeadon Borough police officers Jenna Long and Nicholas Tokonitz testified on behalf of the Commonwealth.

Ms. Gray testified that as of the time of the May 19, 2018 incident, Whitaker had been her boyfriend for a few months. After going out to a restaurant in the afternoon with Whitaker and her sons to celebrate the oldest son's twenty-second birthday, they returned to her apartment. Whitaker asked her to have sex two to three times, to which she said no. She fell asleep on her bed and woke when Whitaker put a pillow over her face that restricted her breathing until she was able to turn her head. He then wrapped the pillowcase around her throat which she had to loosen to breathe. He used his body and elbows to hold her down. He removed Ms. Gray's jeans and penetrated her vagina. Whitaker momentarily left the bedroom. When he returned, he retrieved a knife from her dresser and held it to her throat, pulling her to a standing position. She testified that she had been fearful that Whitaker would harm her with the knife, which she identified at trial. (**See** N.T. Trial, 11/07/19, at 52-62, 65, 67, 91, Exhibit C-6).

- 2 -

Ms. Gray's fifteen-year-old son testified that on the day of the incident, he heard a "loud commotion" from the bedroom that concerned him so he went in to investigate. While standing at the bedroom doorway in shock, he observed that Whitaker had a pillowcase around Ms. Gray's neck and she was struggling to break free. Ms. Gray was able to toss her cellphone to her son and he then hid in a closet and called his grandmother and 911. (*See id.* at 127-29, Exhibit C-6).

Officer Long testified that she was the first officer to arrive on scene. When she parked her vehicle in front of the apartment, she could hear a female screaming. Upon entering the residence and approaching the stairway, she observed Ms. Gray and Whitaker standing close together at the top of the stairs with him holding the knife. Whitaker tossed the knife down the stairs and Ms. Gray was visibly upset and shaking. The officer collected the knife, pillows and pillowcases. She identified the knife at trial.

Officer Long stated that after Whitaker was placed in a holding cell at the police station, she observed him masturbating on the closed-circuit camera. The trial court overruled Whitaker's best evidence rule objection to testimony about what was seen on the video. The officer stated that she accompanied Officer Tokonitz when he went to tell Whitaker to stop his behavior and she saw urine on the floor of the cell. (*See id.* at 144-47, 149-50).

Officer Tokonitz testified that he and another officer were dispatched to Ms. Gray's residence after Officer Long had gotten there. They placed Whitaker in handcuffs and escorted him to a police vehicle. Although Whitaker initially cooperated with the officers, he then resisted, and the police had to forcibly place him in their vehicle and into the holding cell at the police station. Afterward, Officer Tokonitz observed Whitaker masturbating on the closed-circuit television. The officer went to the cell to tell him to stop and observed fresh urine both in the cell and in front of it, and that the plywood frame on the cell's bed was broken in half. Whitaker had been the only person in this cell block and the officer testified the cell had been clean earlier and there had been no damage to the bedframe before he placed Whitaker in it. (**See id.** at 164-65, 177-78).

On November 8, 2019, the jury convicted Whitaker of misdemeanor Strangulation, Simple Assault, PIC and Institutional Vandalism and acquitted him of felony Rape and Sexual assault. On December 6, 2019, the trial court sentenced him to an aggregate sentence of not less than forty-four nor more than 132 months' incarceration.

Timely post-sentence motions were filed on December 16, 2019 ,in which Whitaker raised several challenges and counsel requested the opportunity file a supplemental post-sentence motion. On December 26, 2019, the trial court granted the request to file a supplemental motion, giving Whitaker fourteen days after transcripts were filed. On January 3, 2020, the

court appointed new counsel at Whitaker's request. On March 11, 2020, it granted new counsel fifteen more days to file supplemental post-sentence motions. On May 11, 2020, counsel filed supplemental post-sentence motions, and on August 7, 2020, the trial court granted the motion to the extent it challenged the sentence and denied all other claims. Whitaker timely appealed.[2,3] Counsel has filed an application to withdraw and an **Anders**

_____

[2] On August 31, 2020, Whitaker filed a *pro se* notice of appeal at 1660 EDA 2020. Counsel filed a notice of appeal on September 3, 2020, at 1664 EDA 2020. On April 27, 2021, this Court dismissed the *pro se* appeal as duplicative.

[3] On June 30, 2021, a Rule was issued for Whitaker to show cause why this matter should not be quashed as untimely. After receiving his response, the Rule was discharged and referred to the merits panel. Hence, as a preliminary matter, we must determine if this appeal is properly before us. On March 11, 2020, during the 120-day period to decide Whitaker's post-sentence motion, the trial court granted counsel until March 26, 2020, to file a supplemental motion. **See** Pa.R.Crim.P. 720(B)(1)(b). The 120-day period for filing an order on Whitaker's December 16, 2019 post-sentence motion expired on April 15, 2020. **See** Pa.R.Crim.P. 720(B)(3). However, the Supreme Court of Pennsylvania entered a Judicial Emergency Order in response to the Covid-19 pandemic stating that all papers required to be filed between March 19, 2020, and May 8, 2020, shall be deemed timely if filed by May 11, 2020. Therefore, because the deadline for deciding the motion and the date for filing the supplemental post-sentence motion fell during this time, May 11, 2020, became the 120-day deadline for: (1) Whitaker to file a supplemental post-sentence motion; and either (2) the court to file an order deciding the post-sentence motion; or (3) the prothonotary to file an order denying the post-sentence motion by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(a). Whitaker timely filed his supplemental post-sentence motion, but neither the trial court nor prothonotary entered an order. Instead, the trial court decided the post-sentence motion on August 7, 2020, which was within 120-days after May 11, 2020, but well after it had lost jurisdiction to decide the December 16 2019 post-sentence motion, including any supplement thereto. **See** Pa.R.Crim.P. 720(B)(3)(a). Whitaker filed a notice of appeal within thirty days of the August 7, 2020 decision, but because the decision was filed outside the
*(Footnote Continued Next Page)*

brief. On December 27, 2021, Whitaker filed a *pro se* response brief to the *Anders* brief and on March 10, 2021, he filed a *pro se* reply brief.

## II.

## A.

Criminal defendants have a constitutional right to a direct appeal as well as to counsel on that appeal. *See Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007). Before appointed appellate counsel may be permitted to withdraw pursuant to *Anders*, the following conditions must be met:

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.

*Id.* at 898.

> Once an *Anders* brief is filed, its contents are only sufficient if they:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling

_____

120-days authorized by Rule 720, it was a legal nullity; thus, ordinarily we would be deprived of jurisdiction to decide this matter. However, under the circumstances and due to any potential confusion caused by the Covid-19 pandemic and the Judicial Emergency Order entered in response thereto, we will deem the failure of either the trial court or the prothonotary to timely act on Whitaker's post-sentence motion to be a breakdown in the operation of the court and will consider the merits of his appeal. *See Commonwealth v. Khalil*, 806 A.2d 415, 420-21 (Pa. Super. 2002).

case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

In addition, counsel must provide the appellant a copy of the petition to withdraw and the **Anders** brief, advising him of the right to retain new counsel, to proceed *pro se*, or to raise new grounds for appellate relief. **See id.** If counsel has met these obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 354 n.5.

In this case, counsel has satisfied the technical requirements of **Anders** and **Santiago**. He has filed a petition seeking to withdraw with this Court, stating that he has examined the entire record and found this appeal to be frivolous. The petition included an attached copy of the letter he sent to Whitaker. Enclosed with that letter was a copy of the petition to withdraw, as well as a copy of the **Anders** brief. The content of the **Anders** brief also comports with all requirements for counsel's withdrawal.

Because the **Anders** requirements have been satisfied, we will turn to an independent review to determine if Whitaker's appeal challenging the

sufficiency of the evidence to support his conviction of Strangulation, Simple Assault, PIC and Institutional Vandalism is, in fact, wholly frivolous.[4]

**B.**

**1.**

In his response brief to the **Anders** brief, Whitaker maintains that the evidence was insufficient to support the charge of Strangulation because he was acquitted of Sexual Assault. (**See** Whitaker's Response Brief, 12/27/21, at 7).

The Crimes Code provides, in pertinent part, that:

_____

[4] When reviewing a sufficiency of the evidence challenge, we must determine:

> [w]hether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Gause**, 164 A.3d 532, 540-41 (Pa. Super. 2017) (citations and quotation marks omitted).

(a) … A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

(1) applying pressure to the throat or neck[.]

*    *    *

(d) Grading—

(1) Except as provided in paragraph (2) or (3) a violation of this section shall constitute a misdemeanor of the second degree.

(2) A violation of this section shall constitute a felony of the second degree if committed:

*    *    *

(iii) in conjunction with sexual violence as defined in 42 Pa.C.S. § 62A03 (relating to definitions)[.]

18 Pa.C.S. § 2718(a), (d)(1), (2)(iii).

As the above unambiguous language demonstrates, although sexual assault is considered for grading purposes, it is not an element that must be proven to support a conviction for strangulation.[5]  Moreover, the evidence presented at trial was sufficient to support the Strangulation conviction.

Ms. Gray testified that Whitaker secured a pillowcase around her throat and she could not breathe.  (**See** N.T. Trial, 11/07/19, at 53-54).  This testimony was corroborated by Ms. Gray's son who observed Whitaker

---

[5] As stated previously, Whitaker was convicted of Strangulation as a second-degree misdemeanor because he was found not guilty of sexual assault.

wrapping the pillowcase around his mother's throat before calling the police.[6] (**See id.** at 127). This evidence was sufficient to establish that Whitaker intentionally impeded Ms. Gray's breathing by applying pressure to her throat. **See** 18 Pa.C.S. § 2718(a).[7]

**2.**

Whitaker next maintains that the evidence was insufficient to establish Simple Assault because Ms. Gray was not in fear of serious bodily injury. (**See** Whitaker's Response Brief, at 7). In support of his position, he directs this Court's attention to Ms. Gray's preliminary hearing testimony in which she

---

[6] In his March 10, 2022 reply brief, Whitaker states that the Commonwealth erred in using the testimony of Ms. Gray's minor son without first performing a competency hearing. (**See** Whitaker's Reply Brief, 3/10/22, at 1-2, 5) (pagination provided). This issue is waived because Whitaker provides no legal authority for this allegation, discussion thereof, references to the record or place of raising any such objection at trial. **See** Pa.R.A.P. 2101, 2119(a)-(c), (e). Moreover, our review of the record reflects that although the witness was fourteen at the time of the incident, he was fifteen at the time of trial. (**See** N.T. Trial, 11/07/19, at 7, 126). No competency test was required. **See Commonwealth v. Moore**, 980 A.2d 647, 650 (Pa. Super. 2009), *appeal denied*, 991 A.2d 311 (Pa. 2010) ("[W]hen a witness is under the age of fourteen, the trial court must hold a competency hearing. [C]ompetency presumed where the child is more than 14 years of age.") (citations and internal quotation marks omitted).

[7] Although there was testimony that Whitaker held a pillow against Ms. Gray's face so she could not breathe without turning her head, which arguably would have supported a conviction pursuant to 18 Pa.C.S. § 2718(b), Whitaker was only charged under subsection (a). (**See** Information, 10/24/18, at 1); **see also** 18 Pa.C.S. § 2718(b) ("A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing … of another person by … blocking the nose and mouth of the person.").

stated that she would not have called the police and did not direct her son to do so. (**See id.**); (N.T. Preliminary Hearing, 9/25/18, at 17). He also argues that the 911 recording played at trial reflects that she did not tell her son to request an ambulance. (**See** N.T. Trial, 11/08/19, at 71).

First, Whitaker's argument, which considers the evidence in the light most favorable to him, is contrary to our standard of review, which requires we review the evidence in the light most favorable to the Commonwealth as verdict winner. **See Gause**, **supra** at 540-41. Second, it is irrelevant whether Ms. Gray advised her son to tell the 911 operator to send an ambulance or not because there was sufficient evidence to establish the crime of Simple Assault.

Under the Crimes Code, "a person is guilty of assault if he … attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S. § 2701(a)(3). Here, not only did Whitaker commit the crime of Strangulation as described above, but he also pressed a pillow against Ms. Gray's face to restrict her breathing and held her down against her will, physically restraining her with his elbows and restricting her movements before he jabbed a knife into her neck, which she repeatedly testified caused her to fear that he was going to use the weapon to slice her. (**See** N.T. Trial, 11/07/19, at 52-53, 57-58, 62, 91). Officer Long observed Whitaker with the knife and both she and Ms. Gray identified it at trial as the same one that he

threw to the officer and that he had held to Ms. Gray's neck.  (***See id.*** at 65, 67, 146-47, Exhibit C).

Accordingly, the evidence was sufficient to support the Simple Assault conviction where the jury could reasonably find that it showed that Whitaker attempted by physical injury to put Ms. Gray in fear of imminent bodily injury. ***See*** 18 Pa.C.S. § 2701(a)(3).

**3.**

Whitaker next argues that the evidence was insufficient to support his conviction of PIC because the Commonwealth failed to obtain DNA or fingerprint evidence from the pillowcases or knife.  (***See*** Whitaker's Response Brief, at 8); (Whitaker's Reply Brief, at 1) (pagination provided).

The Commonwealth charged Whitaker with PIC based on his possession of the subject knife.  (***See*** Information, at 1, Count 5).  "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally."  18 Pa.C.S. § 907(a).  An "instrument of crime" is "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."  18 Pa.C.S. § 907(d)(2).

Fingerprint and DNA evidence are not required elements of PIC and, therefore, do not implicate sufficiency.  ***See Gause***, ***supra*** at 540-41 (sufficiency claim focuses on whether evidence established each element of offense).

Ms. Gray testified that Whitaker brandished a knife and held it to her throat hard enough to jab her. (*See id.* at N.T. Trial, 11/07/19, at 52-54). Officer Long saw the knife in Whitaker's hand before he threw it to her and she secured it at the scene. (*See id.* 145-46, 148). Both Ms. Gray and Officer Long identified the knife at trial. (*See id.* at 65, 67, 147).

This evidence was sufficient to support a finding that Whitaker possessed the knife with the intent to employ it criminally under circumstances not manifestly appropriate for its lawful purposes. *See* 18 Pa.C.S. § 907(a), (d)(2). This issue lacks merit.

**4.**

In his final sufficiency argument, Whitaker contends that his conviction for Institutional Vandalism was insufficient because there was no videotape of the closed-circuit footage or photograph of the damage contrary to the best evidence rule and the charge was supported by perjury and hearsay. (*See* Whitaker's Response Brief, at 8-9); (Whitaker's Reply Brief, at 2). He also contends that at the preliminary hearing, Officer Tokonitz stated that two other officers told him that Whitaker vandalized his holding cell, and at trial, he stated that Officer Long witnessed the institutional vandalism, which conflicted with his prior testimony and was insufficient to support his conviction because it was hearsay. (*See* Whitaker's Response Brief, at 8-9).

We first consider the issue of any alleged conflicts in testimony between the preliminary hearing and trial about Institutional Vandalism. As a

preliminary matter, we note that this issue is waived on two bases. First, Whitaker fails to identify where in the record this issue was raised and, second, our independent review confirms that counsel did not question Officer Tokonitz about any alleged conflicts between his preliminary hearing and trial testimony. *See* Pa.R.C.P. 302(a), 2119(e).

Moreover, the argument lacks merit. Officer Tokonitz stated at the preliminary hearing that two other officers told him that they observed Whitaker break the bed. (*See* N.T. Preliminary Hearing, at 46). This was not inconsistent with his trial testimony in which he stated that he observed Whitaker masturbating on the closed-circuit television and when he went to the holding cell to tell Whitaker to stop, he saw that the bed in the cell had been broken. (*See* N.T. Trial, 11/07/19, at 176-77). Furthermore, although Officer Tokonitz first stated that Officer Long "brought his attention to the closed-circuit television," before re-phrasing this to he "had occasion to look at the closed-circuit television," at no time did he say that it was Officer Long who witnessed Whitaker breaking the bed. (*Id.*).

Regarding his best evidence rule contention, that rule provides "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. The best evidence rule:

> is applicable only in circumstances where the contents of the writing, recording or photograph are integral to proving the central issue in a trial.... Consequently, if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002

- 14 -

requires that the original be introduced only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case.

***Commonwealth v. Green***, 162 A.3d 509, 518 (Pa. Super. 2017) (citation omitted).

In this case, Officers Tokonitz and Long testified that they saw Whitaker masturbating on the closed-circuit television to explain why they went to his holding cell. (***See*** N.T. Trial, 11/07/19, at 149-50, 177). The Commonwealth did not rely in any way to prove the Institutional Vandalism charge. Because the contents of the video were not integral to proving Institutional Vandalism, which was based on Whitaker breaking the holding cell bed, the best evidence rule did not apply.

Finally, the Commonwealth produced sufficient circumstantial evidence to prove that Whitaker committed Institutional Vandalism. "A person commits the offense of institutional vandalism if he knowingly … vandalizes, defaces or otherwise damages … any … municipal building" or any property located therein. 18 Pa.C.S. § 3307(a)(3), (5).

Here, Officer Tokonitz testified that when he went to Whitaker's cell to tell him to stop masturbating, he observed that the bedframe of his cot was broken. (***Id.*** at 177-78). Officer Tokonitz stated that prior to this incident, no one else was in the cellblock and the cot was not damaged. (***See id.*** at 177-78). It was for the jury to consider the credibility of Officer Tokonitz, and there was sufficient circumstantial evidence for the jury to find that the

evidence established Whitaker knowingly vandalized, defaced or otherwise damaged the municipal property in his jail holding cell. **See** 18 Pa.C.S. § 3307(a)(3), (5).

Based on the foregoing, viewing the evidence in the light most favorable to the Commonwealth, we conclude that it was sufficient for the jury to convict Whitaker of all crimes charged. **See Gause**, **supra** at 540-41. Whitaker's issues lack merit, and our independent review of the record does not reveal any non-frivolous issues. Accordingly, we grant counsel's application to withdraw and affirm the judgment of sentence.[8]

Judgment of sentence affirmed. Counsel's application to withdraw granted.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022

---

[8] In his reply brief, Whitaker also states that the Commonwealth violated the appellate filing rules and its duty to produce a witness statement for Officer Long pursuant to the federal rules. (**See** Whitaker's Reply Brief, at 3-5) (pagination provided). Not only does our review of the record fail to disclose any filing errors by the Commonwealth that would support the grant of relief requested by Whitaker, (**see id.** at 6) (pagination provided), the rules of Federal Criminal Procedure do not apply to this matter. We also note that, although Whitaker lists "violation of Lively standard" and "violation of Brady Rule," he provides absolutely no discussion, so it is not clear to what he is referring.