J-A22007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                    :   PENNSYLVANIA
                    :
v.                   :
                    :
                    :
BRIAN SCOTT FRANKLIN        :
                    :
Appellant         :   No. 922 WDA 2022

Appeal from the Judgment of Sentence Entered June 23, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000050-2020

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:         **FILED: DECEMBER 11, 2023**

Brian Scott Franklin appeals from the judgment of sentence of two to four years of incarceration and thirteen years of probation following his convictions for indecent assault, corruption of minors, and unlawful contact with a minor. We affirm.

At Appellant's jury trial, then ten-year-old K.F. reticently and reluctantly testified that Appellant, whom K.F. identified as "Uncle Fry," had touched his genitals "more than one time" when K.F. was approximately six or seven years old and that he was "tired of it happening." N.T. Trial, 3/24/22, at 113, 117, 120, 123-24. Significantly, although K.F. refused to look at Appellant in order to identify him as the perpetrator, D.F., K.F.'s estranged father and Appellant's nephew, testified that everyone in his family, including K.F., referred to Appellant by his longtime nickname of "Uncle Fry." *Id*. at 133-34, 167-68.

Appellant had also frequently stayed overnight at the house where K.F. lived. *Id*. at 114-15.

With proper notice to Appellant, three other witnesses, M.S., B.B., and S.S., testified about similar sexual assaults committed against them by Appellant when they were all minors. M.S. stated that he visited Appellant's home to eat and watch movies, sometimes staying overnight, and on multiple occasions, Appellant touched M.S.'s genitals with his hand. B.B. testified that he engaged in similar activities at Appellant's house and that Appellant had fondled his genitals with his hand. Appellant likewise felt S.S.'s genitals with his hand while S.S. and his friends were at Appellant's house to play games, watch movies, and, again, stay overnight. In sum, all three witnesses testified to forming a bond with Appellant when they were children, being in close contact with him, and all stated that Appellant touched them in the same manner.

After the conclusion of trial, Appellant was convicted of the above offenses and sentenced as hereinabove indicated. This timely appeal followed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions on appeal:

1. With respect to Appellant Franklin's conviction voted by his jury, (A) should all three convictions (for the crimes of [i]ndecent [a]ssault, [c]orruption of [m]inors, and [u]nlawful [c]ontact with a [m]inor) be vacated with prejudice due to the failure of the Commonwealth's proof at trial to establish that Appellant was beyond a reasonable doubt the person who committed those crimes; or, alternatively, (B) should Appellant's [c]orruption of [m]inors conviction be vacated, at the least, given the failure of the Commonwealth to present

- 2 -

sufficient evidence to establish the course of conduct element that it was required to prove in order to establish that crime?

2. Should Appellant Franklin's convictions be set aside, and a new trial ordered for any conviction for which sufficient evidence was presented, due to the fact that the court below erred in permitting the Commonwealth to present the testimony of three prior crimes witnesses with the testimony of these witnesses being inadequate to establish common scheme, plan, or opportunity, and being unduly prejudicial in any event[?]

Appellant's brief at 4 (cleaned up).

Appellant's first issue challenges the sufficiency of the evidence to sustain his convictions. We begin by examining the pertinent legal principles. This Court has articulated our standard of review when considering this challenge as follows:

Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017).

Appellant challenges the sufficiency of the Commonwealth's evidence relating to his identity. *See* Appellant's brief at 12. It is well-settled that the

- 3 -

Commonwealth must "establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa.Super. 2010). Appellant avers that "there is nothing but conjecture to support the conclusion that Appellant is the Uncle Fry that [K.F] referred to when he testified." Appellant's brief at 23-24 (cleaned up). In that vein, Appellant contends that K.F. never identified him in the courtroom at trial, as K.F. refused to look around the room to identify Appellant as the perpetrator. *See id*. at 16.

We conclude that this action was not necessary for the Commonwealth to satisfy its burden of proof. Despite K.F.'s evident distress at having to recall these traumatic events, he unequivocally indicated that it was "Uncle Fry" who had abused him. *Id*. at 113. Moreover, D.F. testified that "Uncle Fry" was Appellant's longtime nickname and that if K.F. referred to an "Uncle Fry," he would mean Appellant. *Id*. at 167-68. Viewed in the light most favorable to the Commonwealth as the verdict winner, the foregoing evidence was sufficient to establish Appellant's identity as the perpetrator of the above offenses. Thus, we find unavailing Appellant's argument that the evidence was insufficient on the grounds of identity.

Appellant has further challenged the sufficiency of the evidence for his conviction for corruption of minors, contending that the Commonwealth did not demonstrate that his actions constituted a "course of conduct." *See* Appellant's Brief at 12-13. Specifically, Appellant states that "the

Commonwealth's evidence did not establish that Appellant engaged in more than a single instance of improper sexual conduct involving [K.F.]." *Id*. at 24.

The Crimes Code defines the crime of corruption of minors as follows:

(1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a). This Court has expounded upon the meaning of "course of conduct" thusly:

Course of conduct is defined in multiple instances elsewhere in the Crimes Code and, in each of those instances, course of conduct implies more than one act over time. [Further], this Court has explained that [c]ourse of conduct by its very nature requires a showing of a repetitive pattern of behavior.

*Commonwealth v. Kelly*, 102 A.3d 1025, 1030-31 (Pa.Super. 2014) (*en banc*) (cleaned up) (internal citations and quotations omitted).

Appellant avers that K.F.'s statements that he was assaulted "more than one time" or "more than once" could mean more than once during the same incident, thereby failing to establish a course of conduct that occurred over time. *See* Appellant's brief at 10, 26-27. However, as explained, *infra*, we find Appellant's position unconvincing, as the Commonwealth adduced

- 5 -

evidence that demonstrated Appellant sexually assaulted the victim more than once over a period of time, thus proving a "course of conduct."

First, K.F. testified that the assaults occurred "more than once." N.T. Trial, 3/24/22, at 124. Moreover, K.F. told his mother about the abuse because he was "tired of it happening" and wanted it to stop. *Id*. at 123. K.F.'s statement indicated an ongoing action. Furthermore, the assaults occurred when K.F. was in first grade, but he was not sure if they also happened when he was in kindergarten, thereby demonstrating that they transpired over a period of time, *i.e.*, on more than one occasion. Viewed in the light most favorable to the Commonwealth as the verdict winner, this evidence was sufficient to establish that Appellant abused K.F. on more than one occasion over a period of time, illustrating a course of conduct. Phrased differently, the Commonwealth's course-of-conduct evidence was neither so unreliable nor so weak and inconclusive as to make the jury verdict pure conjecture. **See Gause**, **supra** at 540 ("Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances"). Accordingly, Appellant is not entitled to relief on this issue.

We next turn to Appellant's argument that the trial court erred in allowing the Commonwealth to present the testimony of M.S., B.B., and S.S. regarding prior sexual assaults that Appellant committed against them when

they were minors.[1]    Appellant argues that this testimony constituted propensity evidence barred by Pa.R.E. 403 and Pa.R.E. 404(b)(1) and that it was more prejudicial than probative.  **See** Appellant's brief at 30.

It is well-settled that a trial court's evidentiary rulings are afforded great deference.  As such, "[w]e give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion."  **Commonwealth v. Talbert**, 129 A.3d 536, 539 (Pa.Super. 2015) (cleaned up).  An abuse of discretion "is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that was manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."  **Id**.  Furthermore, we have long understood that:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that the defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.
>
> In determining whether evidence of prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

---

[1] Before trial, the court held a hearing on the Commonwealth's Rule 404(b) notice alleging that Appellant had prior convictions for similar conduct and that the Commonwealth would have three individuals testify detailing how Appellant had abused them.  After the hearing, the court permitted these individuals to testify.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa.Super. 2016) (citation omitted); Pa.R.E. 404(b).

The trial court found that the applicable Rule 404(b) exception supporting admission of the testimony was that involving a common plan or scheme. Hence, we consider the following principles relating to that exception:

> [E]vidence of other crimes or bad acts may be admitted where the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator.

*Commonwealth v. Kurtz*, 294 A.3d 509, 532 (Pa.Super. 2023) (cleaned up). While impossible for crimes to be identical in every respect, "what is essential is that the similarities are not confined to insignificant details that would likely be common elements regardless of who had committed the crimes." *Commonwealth v. Cosby*, 224 A.3d 372, 402 (Pa.Super. 2019), *rev'd on other grounds*, 252 A.3d 1092 (Pa. 2021).

Appellant argues that the trial court erred in admitting the testimony from the three witnesses as a common plan because the commonalities did not establish a "signature" and instead only displayed vague similarities. Appellant's brief at 37-38 (citing *Commonwealth v. Semenza*, 127 A.3d 1, 11 (Pa.Super. 2015)). Appellant contends that the facts of the other assaults

were "run-of-the-mill" and contained no distinctive elements. Appellant's brief at 42-43.

In rejecting Appellant's claims, the trial court found that the sexual assaults of M.S., B.B., and S.S. contained sufficient similarities to establish a common plan, scheme, or design. *See* Trial Court Opinion, 11/21/22, at 6. The trial court determined that the assaults resembled each other, noting that "Appellant [developed] relationships with the victims, [established] their trust . . . and [touched] his victims for his own sexual gratification." *Id*.

Upon review of the certified record, we find no abuse of discretion with the trial court's decision. Indeed, the likenesses among the cases are striking. First, all of Appellant's victims were male children whom Appellant knew well. K.F. was a family member, B.B. was Appellant's step-nephew, and M.S. and S.S. were friends of Appellant's nephews who regularly spent time with him. Due to these close relationships and his status as an adult, Appellant was in a position of authority to all of his victims. Similarly, he cultivated trust and close contact with his victims as a family member or quasi-family member. The three boys whom Appellant had assaulted years prior spoke of engaging in activities such as playing games, watching movies, and staying overnight at Appellant's home, thereby forming a close relationship with him. Appellant had a similar presence in K.F.'s life, even staying overnight numerous times where K.F. resided. Critically, after establishing a sufficient level of trust, Appellant assaulted his victims. Indeed, Appellant did not prey upon strangers

or near-strangers, but rather upon family members or close friends of family members, demonstrating the similarity in his types of victims. *See Kurtz*, *supra* at 532. Furthermore, all four victims reported an identical manner of assault: Appellant touched their genitals with his hand.

Considering the types of victims Appellant selected, the way he cultivated relationships with those victims, and the manner of his assaults, the "[s]ufficient commonality of factors between the incidents dispels the notion that they are merely coincidental." *Id*. Hence, the trial court did not abuse its discretion in admitting this testimony.

Appellant further claims that, even if offered for a proper purpose, the evidence was unduly prejudicial. The trial court was unpersuaded, stating that when balanced against the danger of unfair prejudice, the testimony given by M.S., B.B., and S.S. was relevant to show the similarities among the assaults and to overcome K.F.'s reticence on the witness stand. *See* N.T. Trial, 3/23/22, at 36-37.

In the same vein, we agree with the trial court that Appellant was not unduly prejudiced by the admission of this evidence. Significantly, the victims' testimony was not of the character that "tended to convict the appellant only by showing his propensity to commit crimes." *Commonwealth v. Brown*, 186 A.3d 985, 993 (Pa.Super. 2018) (cleaned up). Rather, as indicated above, it clearly demonstrated Appellant's common plan and scheme. We also note that in weighing the probative value against the potential for prejudice against

Appellant, K.F.'s testimony of Appellant's abuse was uncorroborated at trial. Accordingly, the Commonwealth had significant need for the testimony of the other three victims to help strengthen K.F.'s reluctant and timid testimony, which in turn increased the probative value of this collective evidence. **See Tyson, supra** at 362 (concluding that the trial court abused its discretion in prohibiting common scheme evidence when it was important to the Commonwealth's case to bolster a victim's testimony).

Moreover, any potential for unfair prejudice was alleviated by the trial court's cautionary instruction to the jury that the testimony of M.S, B.B., and S.S. was not offered to demonstrate that Appellant had a bad character or a propensity to commit bad acts, but rather to show that Appellant's abuse was part of a common plan. **See** N.T. Trial, 3/25/22, at 223. This Court has held that "it is presumed that jurors will follow the instructions provided by the court." **Commonwealth v. Gilliam**, 249 A.3d 257, 274 (Pa.Super. 2021). Thus, we discern no abuse of discretion in the trial court's decision to permit the testimony.

For all of the foregoing reasons, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>12/11/2023</u>