J-S37036-23

2024 PA Super 70

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS W. NESTOR | : | |
| | : | |
| Appellant | : | No. 460 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 13, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002107-2022

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

DISSENTING OPINION BY BENDER, P.J.E.: **FILED APRIL 10, 2024**

I respectfully dissent as I agree with Appellant that the Commonwealth did not present sufficient evidence to establish that his impairment was caused by a drug or combination of drugs. Under these facts, where there is no circumstantial evidence of drug usage, I conclude that expert testimony was required and would discharge Appellant's conviction for driving under the influence (DUI).

The conviction at issue requires proof that Appellant was "under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive…." 75 Pa.C.S. § 3802(d)(2). The Commonwealth relied on Trooper Nathan Zimmerman's observations to meet its burden. The trooper explained that, after pulling Appellant over for some erratic driving, he asked Appellant to perform field sobriety tests due to Appellant's "mood swings, his agitation, [and being] extremely talkative the

whole time…. He complained of a dry mouth on numerous occasions." N.T., 11/2/22, at 24. During the field sobriety tests, the trooper noted that Appellant's pupils were dilated. Trooper Zimmerman then conducted Advanced Roadside Impaired Driving Enforcement (ARIDE) tests. Trooper Zimmerman was not qualified as an expert in this area, and he testified that he merely received training on how to perform the ARIDE tests, which are "about common drugs that are used and abused, [and] indicators that different drugs can show." *Id.* at 35. Trooper Zimmerman testified that Appellant's eyes showed no indicators of impairment. Appellant also performed the Modified Romberg Balance Test. The trooper testified that during this test, he looks "for tremors in their eyelids or their extremities and … for swaying of the body." *Id.* at 36-37. The Commonwealth then asked Trooper Zimmerman what indicators of impairment he observed during that test, and Appellant objected on the basis that this called for expert testimony. *Id.* at 37. The trial court overruled the objection, and Trooper Zimmerman then explained that Appellant's eyelids "had severe tremors and that his arms and his hands were twitching…." *Id.* at 40. The trooper believed that Appellant was acting "the way that someone that's impaired by some sort of stimulant acts." *Id.* at 42. Appellant again objected, arguing that such a conclusion required expert testimony. The Commonwealth replied that the witness was not offering an expert opinion and was merely testifying to "his personal observation of interacting with people who he knows to be under the influence of a stimulant." *Id.* The trial court overruled the objection.

Expert testimony is not *per se* required to convict a driver of violating Section 3802(d)(2). ***Commonwealth v. Griffith***, 32 A.3d 1231, 1233 (Pa. 2011). By the same token, the Commonwealth may, in some circumstances, need to present expert testimony. ***Id.*** at 1238 ("We do not dispute that in some cases, depending on the specific facts and circumstances, expert testimony may be helpful, or perhaps even necessary, to prove causation under subsection 3802(d)(2)…."). This is one of those cases.

In this regard, Appellant's issues effectively overlap. The first issue claims that the trial court improperly relied on Trooper Zimmerman's lay testimony, and the second and third issues assert that the evidence was insufficient to convict beyond a reasonable doubt in the absence of expert testimony. I therefore discuss the issues collectively.

In response to Appellant's objection that expert testimony was needed to discuss indicators of impairment, the Commonwealth stated that it did not intend for Trooper Zimmerman to opine that Appellant was under the influence of a specific controlled substance. ***See*** N.T., 11/2/22, at 38-39 ("I'm not going to ask him to render an opinion on what, if anything, [Appellant] was under the influence of."). The Commonwealth told the court that it sought to merely have the trooper testify as to his perceptions. The Commonwealth argues that Trooper Zimmerman's lay testimony was properly admitted for these reasons, explaining:

> As the trooper testified, his job places him in a lot of different situations with impaired individuals. Particular to this case, the trooper testified to his observations of individuals he has

encountered that have been impaired due to controlled substance stimulant use and described those individuals to be talkative, agitated, complaining of dry mouth, dilated pupils, and to have mood swings. All the same observations that Trooper Zimmerman noted that [Appellant] displayed during his interactions with him. After laying this foundation, Trooper Zimmerman expressed his belief that [Appellant] was under the influence of a controlled substance stimulant and that this impaired his ability to drive safely.

Commonwealth's Brief at 19.

I agree that Trooper Zimmerman could offer an opinion that Appellant was impaired. However, the statute requires that the Commonwealth establish that said impairment was caused by a drug or combination of drugs, and I conclude that, in this case, expert testimony was required.

The Majority concludes that "[t]he totality of Trooper Zimmerman's observations, taking into account his relevant training and experience, permitted the admission of his lay opinion under Pa.R.E. 701." Maj. Op. at 13.[1] My learned colleagues conflate evidence of impairment with evidence of causation. I agree that Trooper Zimmerman could testify to his lay opinion

_____

[1] The Majority declares that our courts "have generally agreed with federal courts that a witness with the requisite observations and experience may offer a lay opinion to establish DUI – controlled substance impairment under section 3802(d)(2)." Maj. Op. at 9. Whether our law aligns with federal law on this issue is beyond the scope of the issues as presented. Additionally, Pennsylvania Rule of Evidence 702 ("Testimony by Expert Witnesses"), "differ[s] from F.R.E. 702 in that Pa.R.E. 702(a) and (b) impose the requirement that the expert's scientific, technical, or other specialized knowledge is admissible only if it is beyond that possessed by the average layperson." Pa.R.E. 702. I do not see any need to opine that federal law is identical to our law on this specific topic, as existing Pennsylvania law adequately addresses the issue.

that Appellant was impaired. What he could not do, as a lay witness, was opine that the impairment was **caused** by a drug or combination of drugs. I conclude that evidence of causation is lacking in this case, and I do not believe that the additional circumstantial evidence cited by the Majority bridges the gap.

The inability to link impairment to a specific drug[2] is not a novel problem and typically arises when a driver, like Appellant here, refuses chemical testing. However, I submit that cases in which this Court has held that expert testimony was not needed to convict under Section 3802(d)(2) tend to involve direct or circumstantial evidence of a particular drug. Typically, those are (1) an admission; (2) blood or urine tests revealing the presence of those substances; and/or (3) use paraphernalia or the actual drugs. Our decision in **Commonwealth v. DiPanfilo**, 993 A.2d 1262 (Pa. Super. 2010), is illustrative. The driver in that case admitted "that he had cocaine metabolites and opiates in his urine, but argue[d] that this evidence [could not] be scientifically linked to any impairment." **Id.** at 1264 (footnote omitted). We concluded that "the intoxicating effects of cocaine and opiates, like the intoxicating effects of alcohol, are … widely and commonly understood…." **Id.** at 1267. Thus, expert testimony was not needed due to the objective evidence

---

[2] The statutory reference to "drug" in Section 3802(d)(2) is not limited to controlled substances. **See Commonwealth v. Roser**, 914 A.2d 447, 455–56 (Pa. Super. 2006) (concluding that "gasoline and bug and tar remover are drugs under the circumstances of this case"). For ease of reference, I will refer to "drugs" as a shorthand.

that the driver had specific drugs in his system combined with the "widely and commonly understood" effects of those drugs. *See also Commonwealth v. Spence*, 290 A.3d 301, 310 (Pa. Super. 2023) (holding that expert testimony was not needed due to circumstantial evidence; the trooper "immediately detected the odor of marijuana" and the driver admitted to smoking marijuana hours before driving).

Our Supreme Court's decision in *Griffith*, which overruled this Court's holding that expert testimony is required when prescription medications are at issue, similarly illustrates the importance of establishing that evidence of impairment was caused by a specific drug. There, the Court explained:

> We recognize that the Superior Court appeared to limit its requirement for expert testimony in subsection 3802(d)(2) cases to those involving *prescription* medications as the alleged intoxicants. This limitation was based on the Superior Court's determination that the average layperson does not know or recognize the effects of prescription medications. We do not believe that the Superior Court's division of drugs into prescription versus non-prescription categories is warranted or helpful in the interpretation or application of subsection 3802(d)(2) or in the determination of whether an expert witness should be called. Pursuant to our general standard, a need for expert testimony arises when "the jury is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman." *Kozak v. Struth*, … 531 A.2d 420, 422 ([Pa.] 1987). The need for expert testimony in a subsection 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence, viewed pursuant to the general standard expressed in *Kozak*, *supra*.

*Griffith*, 32 A.3d at 1239 (emphasis in original).

The reference to "the specific drug at issue" demonstrates that the Commonwealth cannot rely on conjecture, which is consistent with general principles surrounding sufficiency review. **Commonwealth v. Boettcher**, 459 A.2d 806, 807 (Pa. Super. 1983) ("It is settled law that while guilt may be proved by direct or circumstantial evidence, it may not rest upon mere suspicion or conjecture."). This Court's decision in **Commonwealth v. Gause**, 164 A.3d 532 (Pa. Super. 2017) (*en banc*), which Appellant largely relies upon, drives this point home. In that case, the Commonwealth charged Gause with driving under the influence of alcohol as well as a controlled substance. The arresting officer smelled alcohol on Gause's breath but did not detect any signs of marijuana usage. During field sobriety tests, Officer Eiker performed, *inter alia*, the Romberg Test due to her suspicion that Gause was under the influence of marijuana. She observed Gause's eyelids tremoring and opined that the tremors were associated with marijuana usage. Gause refused blood testing.

The **Gause** Court stated, "expert testimony is not necessary to establish impairment under subsection 3802(d)(2) where there exists other independent evidence of impairment. In our opinion, the facts and circumstances of the case before us clearly fall within the 'expert testimony necessary' classification." **Id.** at 538. We pointed out that the Commonwealth "provided no evidence that Gause had recently ingested marijuana." **Id.** We elaborated:

- 7 -

On the contrary, Officer Eiker testified that Gause had stopped at a lighted intersection, with his headlights and turn signal properly activated, and that she stopped him after he had turned and she saw that his taillights were not illuminated. Officer Eiker testified that when she activated her lights, Gause properly signaled and pulled over immediately to the curb. Gause provided his license, registration and proof of insurance without fumbling. There was no evidence that an odor of marijuana emanated from his person or from his vehicle at the time he was stopped. There was no testimony that Gause's eyes were bloodshot. Nor did Officer Eiker testify that she discovered any physical evidence of recent marijuana usage. Further, there was no admission from Gause that he had recently smoked marijuana, nor was there eyewitness testimony to establish recent ingestion of marijuana.

*Id.* at 538–39 (citations to transcript and footnote omitted).

The **Gause** Court explained why the officer's testimony linking eyelid tremors to marijuana required expert testimony, as follows:

It is clear to this Court that Officer Eiker's observation of "eyelid tremors" is not the typical and obvious indicia of marijuana use, such as the distinct odor of burnt marijuana emanating from the person or the vehicle. Further, it is eminently clear that attributing body or eyelid tremors to marijuana use requires specialized knowledge…. Unlike staggering, stumbling, glassy or bloodshot eyes, and slurred speech, the "ordinary signs of intoxication discernable by a layperson," eye tremors are *not* an ordinary sign of ingestion of a controlled substance, in particular, marijuana. As the trial court acknowledged, Officer Eiker's testimony as to her observations **did not obviate the necessity of an expert** to explain whether "eye tremors," or "body tremors," would indicate that someone was under the influence of marijuana and that this impaired his ability to safely drive, in violation of section 3802(d)(2).

*Id.* at 539 (footnote omitted; all emphasis in original).

Officer Eiker was not qualified to link eyelid tremors to drug usage at all. Similarly, Trooper Zimmerman could not opine that Appellant's impairment was due to the presence of drugs in his system. The Majority

argues that this is another basis to distinguish *Gause*, stating, "Critically, unlike the officer in *Gause*, 'Trooper Zimmerman did not voice an opinion as to which controlled substance he suspected [Appellant] had ingested….'" Maj. Op. at 15 (quoting trial court opinion; bracketing supplied by Majority). *Gause* would be meaningless if the Commonwealth could avoid the need for expert testimony by instructing police officers to testify that eyelid tremors are indicative of drug usage. The problem in *Gause* was not that the officer linked the behavior to a specific drug; the problem was that the officer was not qualified to link the behavior to drug usage at all. The same is true here.

Furthermore, the fact that Trooper Zimmerman identified Appellant as being under the influence of a "controlled substance stimulant" further highlights the need for expert testimony. As the *Gause* Court remarked, behaviors like eye tremors can be caused by a variety of innocent behaviors:

> According to the Mayo Clinic, eye tremors, or eye twitches, are also an indication of stress, bright light, caffeine excess, fatigue, irritation of the eye surface or inner eyelids, physical exertion, smoking, wind and alcohol use. Additionally, eye tremors can also be caused by various medical conditions, including dry eyes, glaucoma, blepharitis, corneal abrasion, and Tourette's syndrome.

*Gause*, 164 A.3d at 539 n.8.

The *Gause* Court's analysis signals a belief that the General Assembly presumably did not intend for, *inter alia*, caffeine, which is a stimulant, to qualify as a drug for purposes of the DUI statute. The principle that emerges from our caselaw is that connecting eyelid tremors and eye twitches to drug use calls for expert testimony. For the foregoing reasons, I agree with

Appellant that expert testimony was needed to establish that the signs of impairment observed by the troopers were attributable to drugs.

Next, the Majority distinguishes **Gause** on the grounds that Gause exhibited far more limited signs of impairment than Appellant. However, I do not agree that the signs of impairment displayed by Appellant were so circumstantially strong that expert testimony was not needed. I do not foreclose the possibility that a citizen's behavior could be so bizarre or irrational that the Commonwealth is entitled to a rational inference on sufficiency-of-evidence review that the person must have been "on something." I simply conclude that Appellant's behavior does not rise to that level. Nor is there any other circumstantial evidence to suggest that Appellant's impairment was due to a drug. Significantly, the troopers did not find any kind of drugs or use paraphernalia in Appellant's vehicle. Appellant did not admit to recently ingesting any kind of drug. And the Commonwealth failed to have a drug recognition expert examine Appellant.[3] While Appellant's refusal to submit to a blood draw is admissible as evidence, 75 Pa.C.S. § 1547(e), that is not dispositive, as "[n]o presumptions shall arise" from the refusal, **id.**, and the driver in **Gause** likewise refused a blood draw.

---

[3] Trooper Zimmerman testified that he requested a drug recognition expert, but "[t]here was none available at the time." N.T., 11/2/22, at 67.

- 10 -

Finally, the Commonwealth and the Majority rely on the dashcam video showing Appellant's driving,[4] his mood swings, agitation, and talkative manner. These are not, in my view, particularly compelling pieces of circumstantial evidence. Being pulled over is not a pleasant experience, and mood swings and talkative behavior may simply reflect nervousness or annoyance. The Majority does not suggest otherwise; instead, my learned colleagues choose to defer to the trial court's credibility determinations. Maj. Op. at 22 ("The trial court found Trooper Zimmerman credible, and Appellant not credible."). As I have explained, Trooper Zimmerman was not qualified to offer an opinion that Appellant's impairment was caused by a drug. Therefore, the trial court could not credit Trooper Zimmerman as an expert. Relatedly, the fact that the trial court did not credit Appellant's explanation for his impaired driving does not relieve the Commonwealth of its burden to establish the elements of the offense beyond a reasonable doubt. "[T]he Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony. The disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (quotation marks and citation omitted). Appellant was not required to convince the court that his impairment was

_____

[4] As the trial court opinion relates, Appellant's vehicle veered over the fog and center lines. After reviewing the video of Appellant's driving and his field sobriety tests, I do not conclude that Appellant's behavior was so erratic that the Commonwealth was entitled to a rational inference that he was on drugs.

- 11 -

attributable to an innocent explanation. On the contrary, the Commonwealth was required to prove beyond a reasonable doubt that his impairment was caused by a drug. Because the Commonwealth failed to do so under these circumstances, I would discharge Appellant's DUI conviction.