J-A23045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER FRAUNFELTER | : | |
| | : | |
| Appellant | : | No. 120 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 5, 2023
In the Court of Common Pleas of Lycoming County
Criminal Division at No: CP-41-CR-0000677-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:           **FILED: SEPTEMBER 30, 2025**

Appellant, Christopher Fraunfelter, appeals from the judgment of sentence imposed on September 5, 2023, by the Court of Common Pleas of Lycoming County, made final by the denial of his post-sentence motion on January 16, 2024. He challenges certain evidentiary rulings, the sufficiency of the evidence and the discretionary aspects of his sentence. Upon review, we reverse the convictions at counts 3, 5, 6, 8, 10, 11 and 13, vacate the judgment of sentence, and remand for resentencing.

Trooper James Rosco Ballentyne is a member of the Northeast Computer Crime Unit on Pennsylvania's Internet Crimes Against Children ("ICAC") task force and was the lead investigator in this case. *Id.* at 37. On or about January 2, 2022, Trooper Ballentyne received a report of a cyber tip sent to the National Center for Missing and Exploited Children ("NCMEC") concerning child sexual abuse material ("CSAM"). N.T. Trial, 5/4/23, at 46-47. NCMEC

received the tip from Kik, a social media platform.[1]  *Id.* at 47.  The NCMEC report was approximately 14 pages long and contained the basic information used to register the Kik account and an IP address log which indicated when the user uploaded and/or accessed the media.  *Id.* at 45-46.  Trooper Ballentyne was provided with an email address of fraunfelter88@gmail.com, the Kik account felter88_70k, the username felter88, an IP address of 98.235.182.156, and the type of device used, a Samsung Galaxy S21 cell phone.  *Id.* at 48, 56.  The report indicated that the Kik account was active from 2021 to 2022 during the time that the suspected CSAM files were uploaded.  *Id.* at 49, 53.

Upon receipt of the NCMEC report, Trooper Ballentyne started an investigation.  *Id.* at 37.  He utilized the American Registry of Internet Numbers[2] ("ARIN") to determine that the IP address provided in the tip was owned by Comcast.  *Id.* at 56.  A subpoena was issued to Comcast for the name of the customer that the IP address was assigned to when the suspected CSAM files were uploaded or accessed.  *Id.*  Comcast responded to the subpoena and identified Appellant as the subscriber with an address of 231 Curtin Street, South Williamsport, Pennsylvania.  *Id.* at 59.

---

[1] Social media platforms are required to actively fight child exploitation on their platforms in accordance with the Adam Walsh Act.  *See* N.T. Trial, 5/4/23, at 35.  They cooperate with law enforcement by identifying, flagging and reporting activity that violates their terms of service and is potentially illegal.  *Id.* at 36.  The social media platform gathers the information and provides a report to NCMEC.  *Id.*

[2] All IP addresses in North America are registered with ARIN.  *Id.* at 41.

Trooper Ballentyne confirmed that Appellant's address on his driver's license was 231 Curtin Street, and then conducted physical surveillance of the residence. *Id.* at 59-60. Thereafter, Trooper Ballentyne obtained a search warrant for Appellant's residence. *Id.* at 62. While executing the warrant, Trooper Ballentyne interviewed Appellant. *Id.* at 63. Appellant confirmed that his email was fraunfelter88@gmail.com, that he previously used Kik with the username felter88 and that he had recently traded in his Samsung Galaxy S21 phone for a Galaxy S22 approximately one week prior. *Id.* He denied that anyone else had access to his mobile devices. *Id.* at 66. A mobile forensics lab conducted a digital search of Appellant's Galaxy S22 cell phone. *Id.* at 64. There were no suspected CSAM files on Appellant's Galaxy S22, or any other device.[3] *Id.* However, the phone indicated that it was associated with the same email address – fraunfelter88@gmail.com. *Id.*

After conducting a formal interview of Appellant at the police station, Trooper Ballentyne charged Appellant with 40 counts of sexual abuse of children – 20 counts each of distribution and possession.[4] Each CSAM file had a corresponding distribution and possession charge. Appellant's defense at trial was essentially that someone hacked into his IP address and/or phone, downloaded and then distributed the CSAM files. Appellant was found guilty

---

[3] Although no suspected CSAM was found on Appellant's device(s), the files were saved by Kik and provided to Trooper Ballentyne who was able to view each file.

[4] 18 Pa.C.S.A. § 6312(c), (d), respectively.

- 3 -

on all 40 counts following a jury trial. Sentencing was deferred for a presentence investigation and an assessment by the Sexual Offenders Assessment Board ("SOAB") to determine whether Appellant is a sexually violent predator.

On September 5, 2023, Appellant was sentenced to an aggregate term of 20 to 40 years imprisonment, broken down as follows:

- Count 1          5-10 years

- Count 2          5-10 years, consecutive to Count 1

- Counts 3-20      5-10 years, concurrent to each other and concurrent to Counts 1 and 2

- Counts 21-22     5-10 years, consecutive to each other and consecutive to Counts 1 and 2

- Counts 23-40     5-10 years, concurrent to each other and concurrent to all other counts

Appellant is required to register as a Tier II sexual offender and was not found to be a sexually violent predator. He filed a timely post-sentence motion, which was ultimately denied by operation of law. *See* Order, 1/16/24. This appeal followed. Both the trial court and Appellant complied with Pa.R.A.P. 1925. Appellant raises the following issues for our review:

I.    Did the lower court err by permitting Trooper Ballentyne to testify at trial concerning signs of deception because the officer was not qualified as an expert within this area[?]

II.   Whether the evidence presented at trial was insufficient to establish the distribution of child sexual abuse material on Counts 3, 5, 6, 8, 10, 11, and 13 because Trooper Ballentyne testified these were for [Appellant's] personal use.

- 4 -

III. Whether the evidence was insufficient to establish prepubescence of the minors depicted on Counts 9, 10, 11, 15, and 16 because Trooper Ballentyne testified that he could not tell whether the children were prepubescent.

IV. Whether the evidence presented at trial was insufficient to establish that the images in Counts 4, 6, 7, 8, 9, 11, 12, 13, 14, and 16 depicted indecent contact because there was no evidence presented at trial which conveyed indecent contact.

V. Whether the sentencing court abused its discretion when imposing consecutive sentences of 5 to 10 years for Counts 1 and 2 and Counts 21 and 22 because the same images were presented in both sets of counts.

VI. Whether the aggregate sentence of 20 to 40 years was an abuse of the court's discretion because it was manifestly excessive based upon the facts of the offense, the Appellant's history with controlled substance abuse, and the duplicative nature of all counts.

Appellant's Brief, at 8.

I. <u>EVIDENTIARY RULING</u>

Appellant's first issue challenges the trial court's decision to permit Trooper Ballentyne to testify regarding general signs of deception. Appellant argues that while Trooper Ballentyne was properly admitted as an expert in the field of digital forensics and internet crimes against children, with additional expertise in computer systems, he was not admitted as an expert in signs of deception. **See** Appellant's Brief, at 17. He argues that Trooper Ballentyne "testified that these *signs of deception* were things that he acquired through specialized police training, putting this directly into the scope of [Pa.R.E.] 702." **Id.** at 19 (emphasis in the original). As Trooper Ballentyne

was not qualified as an expert in signs of deception, Appellant contends that his testimony was improperly admitted. *Id.* at 15-20.

It is well settled that evidentiary rulings are within the sound discretion of the trial court. ***Commonwealth v. DiStefano***, 265 A.3d 290, 297 (Pa. 2021). A trial court's ruling on the admissibility of evidence will only be reversed where there has been an abuse of discretion:

> An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* at 298 (internal citation and quotation marks omitted). Generally, a lay witness may only provide opinion testimony if the opinion is:

(a)   rationally based on the witness's perception;

(b)   helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Conversely, an expert witness may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c)   the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Here, the Commonwealth played a redacted version of Appellant's recorded interview at the police station. N.T. Trial, 5/4/23, at 87. Trooper Ballentyne was not in the room for the interview. *Id.* at 86. After playing the video, the Commonwealth asked Trooper Ballentyne a question about Appellant's body language during the interview. *Id.* at 88. Appellant's counsel objected, arguing that it was a jury issue, and the trial court sustained the objection. *Id.* The Commonwealth then asked Trooper Ballentyne about general signs of deception:

> Q:    Trooper Ballentyne, in the course of being a police officer
>       are you trained in signs of deception?
>
> A:    Yes.
>
> Q:    What are they?
>
> A:    It would vary, but so if a person –
>
> Q:    In general.
>
> A:    An individual might be not fully –
>
> MR. RUDE[5]:    Objection, Your Honor, he's speculating with
>                 might be.
>
> THE COURT:    Is he going to give general . . . or I guess my
>               concern is what – where's he going with his
>               answer.

---

[5] Attorney Rude represented Appellant at trial.

MRS. BEUCLER[6]: In general, . . . it's what are the signs of deception that he's been trained as being a police officer was my question.

THE COURT: I think if he can state to signs of deception he's been trained in he can answer that question, but he has to stay away from speculating in this particular case.

*Id.* at 88-89.

The trial court overruled the objection and Trooper Ballentyne testified that the general signs of deception are: "Someone not fully answering questions. Someone trying to dodge or redirect questions. An individual who is struggling to keep or maintain eye contact. An individual who would fidget or try to exert energy elsewhere versus the conversation." *Id.* at 89-90. Trooper Ballentyne did not opine whether Appellant was being truthful and/or displaying signs of deception during his interview.

The trial court explained its decision to allow the testimony:

[A]llowing Trooper Ballentyne to testify regarding the general characteristic of deception that he has been trained in and has observed over 15 years as a police officer was not an error of law and did not usurp the function of the jury to determine the credibility of [Appellant] because the [trial court] specifically precluded him from giving his opinion with regard to how his training applied to what he observed in [Appellant's] interview.

Trial Court Opinion, 4/8/24, at 5-6 (our pagination).

Pennsylvania courts have distinguished between an officer's lay and expert opinion testimony as follows:

_____

[6] Attorney Beucler represented the Commonwealth at trial.

- 8 -

We have explained that a law enforcement officer's testimony is lay opinion if it is limited to what he observed . . . or to other facts derived exclusively from a particular investigation. . . . On the other hand, an officer testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge.

*Commonwealth v. Jones*, 240 A.3d 881, 890 (Pa. 2020) (citations omitted).

In *Jones*, the detective opined that child sexual assault victims are often unable to recall specific details and dates of sexual assaults. The detective was not offered as an expert witness under Rule 702. On appeal, Jones claimed the detective's opinion was expert testimony and not admissible under Rule 701 because it was not within the scope of knowledge possessed by the average layperson. Our Supreme Court agreed:

[The detective] was asked to provide insights gained through specialized occupational training and experience not within the average layperson's knowledge base as required by the plain language of Rule 702(a). [The detective] called upon the wealth of his knowledge and training as a detective with extensive experience investigating sexual assaults and made connections for the jury based on that specialized knowledge. While some laypersons may be aware of common behaviors and responses to sexual abuse, it would be a generalization to assume that the average juror is privy to the complex psychological dynamics surrounding sexual abuse.

*Id.* at 891. The *Jones* court concluded that the detective's opinion fell within the realm of expert testimony and was inadmissible under Rule 701.

Similarly, this Court has held that a police officer could not offer lay opinion testimony regarding the effects of marijuana use on the body, *Commonwealth v. Gause*, 164 A.3d 532, 539 (Pa. Super. 2017) (*en banc*), or that a defendant was under the influence of a specific drug, such as PCP.

*Commonwealth v. Greene*, --- A.3d ---, 2025 WL 1701219 at *4 (Pa. Super. 2025).

Here, Trooper Ballentyne provided four examples of behavior that, based on his training and experience, indicate a person is being deceptive. While some laypersons may be aware of common signs of deception, it is a generalization to assume that the average juror obtains this knowledge. Because the signs of deception were beyond the knowledge of an average layperson, it was improperly admitted as lay opinion under Rule 701. Additionally, this testimony was not limited to what Trooper Ballentyne observed, nor was it derived from the investigation. By misapplying the law, the trial court abused its discretion when it permitted Trooper Ballentyne to provide four examples of deceptive behavior.

While Appellant is correct that the trial court abused its discretion by admitting Trooper Ballentyne's expert opinion testimony, we must also determine whether the error was harmless. An error may be considered harmless "only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Jones*, 240 A.3d at 891. However, "[w]henever there is a reasonable probability that an error might have contributed to the conviction, the error is not harmless." *Id.*

"The harmless error doctrine reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014) (citation omitted). Our Supreme Court has outlined three scenarios where an error may be deemed harmless:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 671-72 (citation omitted). Moreover, "the harmless error doctrine functions as a substantive principle of law, and appellate courts may exercise discretion to apply the harmless error doctrine *sua sponte*." ***Commonwealth v. Wilson***, 286 A.3d 1288, 1301 (citation omitted).

Here, the prejudicial effect of Trooper Ballentyne's testimony regarding signs of deception was *de minimis*. The Commonwealth played a portion of Appellant's recorded interview for the jury.[7] Trooper Ballentyne provided brief testimony regarding general signs of deception. He did not attempt to relate his testimony to Appellant's recorded interview nor opine whether Appellant exhibited any deceptive behaviors. Rather, Trooper Ballentyne testified that Appellant's recorded interview was consistent with the information Appellant initially provided to officers.

Moreover, the evidence supporting Appellant's guilt was otherwise overwhelming. Appellant's defense that someone hacked into his phone and/or Kik account, downloaded the CSAM images, and distributed them was

---

[7] We are unable to view Appellant's interview because the exhibit which we received from the Commonwealth was locked, and the Commonwealth was unable to provide us with the passcode to open it.

incredible. There was significant evidence that Appellant owned the phone and Kik account that contained the CSAM images and that no one else had access to it. Trooper Ballentyne received a NCMEC report of suspected possession and/or distribution of CSAM images. The report contained Appellant's email address, Kik user account information, IP address, and that the images were downloaded to a Samsung Galaxy S21. Appellant confirmed that the email address and Kik username in the NCMEC report were his. However, Appellant claimed that he last used the Kik account in January 2021. Through the investigation, it was learned that the Kik account associated with the NCMEC report was not created until March 2021.

Kik provided logs to Trooper Ballentyne indicating that two IP addresses were utilized to download and/or upload CSAM images. One IP address was registered to Appellant's residence, and the other was registered to a Verizon mobile phone. Appellant admitted that he previously owned a Verizon Samsung Galaxy S21, but traded it two weeks prior to his interview with police. The report from Kik also noted that the Kik account was created using a Samsung device. No one, other than Appellant, who had access to Appellant's residence, and potentially his IP address, owned a Samsung device. Moreover, Trooper Ballentyne explained that the level of hacking required to support Appellant's defense is highly sophisticated and would cost significant time, money and effort. N.T. Trial, 5/4/23, at 143. Even if someone were to obtain the password to Appellant's router to access his IP address, they would only be able to adjust the router settings. *Id.* at 145-46.

J-A23045-24

They would not be able to hack Appellant's phone and/or Kik account as suggested by the defense. *Id.* at 146.

We are satisfied beyond a reasonable doubt that Trooper Ballentyne's limited testimony on signs of deception was harmless because the prejudicial effect was *de minimis* and the evidence otherwise supporting Appellant's guilt was overwhelming. Thus, Appellant is not entitled to relief on this claim.

II.  SUFFICIENCY OF THE EVIDENCE

Appellant's next three issues challenge the sufficiency of the evidence. Our standard of review is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brown***, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*) (citations omitted). When examining the evidence in the light most favorable to the Commonwealth as the verdict winner, "we accept the evidence of record, and all reasonable inferences drawn therefrom on which the factfinder

- 13 -

could properly have based its verdict, as factually true." ***In the Interest of J.B.***, 189 A.3d 339, 415 (Pa. 2018) (citation omitted).

Relevant to this appeal, a person is guilty of sexual abuse of children if:

(c) **Dissemination of photographs, videotapes, computer depictions and films**. – Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

(d) **Child pornography**[8]**.** – Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S.A. § 6312(c), (d).

A. **Distribution – Counts 3, 5, 6, 8, 10, 11 & 13**

Appellant asserts that the evidence was insufficient to sustain his convictions for counts 3, 5, 6, 8, 10, 11, and 13 regarding distribution of CSAM because Trooper Ballentyne testified that Appellant only sent those images to himself. ***See*** Appellant's Brief, at 22-24. He argues that the Commonwealth presented the evidence under a self-transfer theory and it "had Trooper

_____

[8] Our legislature has changed the language from "child pornography" to "child sexual abuse material." ***See*** 18 Pa.C.S.A. § 6312(d) (effective December 30, 2024).

Ballentyne testify extensively about *why* [Appellant] was sending images to himself on the social media platform." *Id.* at 23 (emphasis in the original).

After the Commonwealth rested, Appellant argued for acquittal because the transfer of CSAM to oneself is not "dissemination" under the statute. N.T. Trial, 5/4/23, at 153. The Commonwealth argued that the statutory language provides for someone to be found guilty if the jury finds them in possession of CSAM for the purpose of distribution. *Id.* at 155. The trial court agreed with Appellant that dissemination requires transfer to another person. *Id.* at 166-67. However, it also agreed with the Commonwealth that the jury could find Appellant guilty if they believed he possessed the CSAM with the purpose of distribution and denied Appellant's motion. *Id.* at 167. As a result, the trial court gave the following curative instruction:

> The defendant cannot be guilty of dissemination solely based upon transfer of illegal material to himself. However, you may consider that testimony in determining if you believe he possessed the illegal material for the purpose of disseminating it to another person.

N.T. Trial, 5/5/23, at 42.

Appellant contends that the Commonwealth's sole witness – Trooper Ballentyne – presented contradictory evidence on the theory of guilt. *See* Appellant's Brief, at 22-24. He claims that the evidence of his guilt was therefore insufficient because the Commonwealth's witness presented testimony exclusively on the theory of self-transfer, and when the trial court effectively ruled that was not possible under the statute, changed their theory

to possession for the purpose of distribution. ***See id.*** For support, he cites ***Commonwealth v. Bennett***, 303 A.2d 220 (Pa. Super. 1973).

In ***Bennett***, the defendant was acquitted of larceny and found guilty of receiving stolen property. ***Bennett***, 303 A.2d at 220. During trial, the Commonwealth presented a sole witness – the codefendant – who presented "conflicting and inconsistent versions" of what transpired. ***Id.*** "With each new version [the codefendant] would recant the previous one and protest that the newest version was in fact the truth." ***Id.*** at 221. On appeal, this Court agreed with the defendant that the codefendant's testimony was "so contradictory on the basic issues as to make any verdict based thereon pure conjecture." ***Id.***

This case is distinguishable from ***Bennett***. First, the witness is a law enforcement officer, and not a codefendant. Second, Trooper Ballentyne did not testify to contradictory versions of what happened – he said that Appellant downloaded the CSAM and in some cases, sent the file back to himself, and in other cases, sent it to another individual or multiple individuals. N.T. Trial, 5/4/23, at 82. He explained the purpose of sending CSAM to oneself, and opined, albeit incorrectly, that it constituted distribution to support a Section 6312(c) conviction. ***Id.*** at 81-82.

Moreover, the Commonwealth argued that Appellant was guilty of possession and distribution of CSAM in its opening statement. It did not limit itself to a theory of self-transfer. The trial court provided a curative instruction regarding Tropper Ballentyne's erroneous conclusion that distribution includes

sending a file to oneself, and it correctly instructed the jury that the statutory language defining dissemination includes possession for the purpose of distribution.

Notwithstanding the foregoing, we conclude that the evidence, construed in the light most favorable to the Commonwealth, is insufficient to prove that Appellant possessed the images in counts 3, 5, 6, 8, 10, 11, and 13 for the purpose of distribution. Trooper Ballentyne testified that Appellant possessed 20 CSAM files and distributed the images or videos in counts 1, 2, 4, 7, 9, 12, and 14-20 to another person or a group of up to 40 individuals. *See* N.T. Trial, 5/4/23, at 100, 104, 107, 109, 112, 113-18. The images or videos in counts 3, 5, 6, 10, and 13 were possessed by Appellant and distributed to himself. *See id.* at 103, 105-06, 109, 113. For counts 8 and 11, Trooper Ballentyne said the material was distributed, but did not say if it was to another person or back to Appellant. *See id.* at 108, 110.

Additionally, there was no evidence that Appellant possessed the images in counts 3, 5, 6, 8, 10, 11, and 13 for the purposes of distribution, such as file sharing software or other method of distribution on Appellant's device(s). The record shows the Commonwealth only presented evidence of self-transfer. Since the Commonwealth did not file a brief in this appeal, we have no basis upon which to consider on what ground the Commonwealth believes it may have established an intent to distribute to others by circumstantial evidence or otherwise. While the trial court correctly pointed out the statutory language of Section 6312(c), it failed to go beyond that to find where in the record there

was an intent to distribute, or when there were other files that were actually distributed.

The Commonwealth has the burden of proof, and it is not this Court's job to scour the record or to act as counsel for the Commonwealth and to make arguments on the evidence that the Commonwealth otherwise could have presented to us. Based on the lack of testimony regarding distribution or an intent to distribute, the jury could not reasonably conclude that Appellant possessed all 20 CSAM files for the purpose of distributing them.

Accordingly, there was insufficient evidence to sustain the convictions at counts 3, 5, 6, 8, 10, 11 and 13, and as such, we reverse the convictions.

### B. **Prepubescence – Counts 9, 10, 11, 15 & 16**

Appellant claims that the Commonwealth failed to present sufficient evidence of prepubescence required to increase the grading of counts 9, 15 and 16[9] in accordance with 18 Pa.C.S.A. § 6312(d.1)(3)(ii), where he was charged with distribution of CSAM. **See** Appellant's Brief, at 25-27. Specifically, Appellant contends that since Trooper Ballentyne was unable to opine whether the minor depicted in the CSAM for counts 9, 15 and 16 was prepubescent,[10] the convictions must be overturned. **See id.**

---

[9] Based on our prior disposition, we will only address those counts that have not been reversed due to insufficient evidence of distribution.

[10] Prepubescent refers to the period of development immediately preceding puberty. **See** https://www.merriam-webster.com/dictionary/prepubescent
*(Footnote Continued Next Page)*

- 18 -

Section 6312 provides for increased grading of the offense based on certain criteria being met:

(d.1) **Grading**. – The offenses shall be graded as follows:

* * * *

(2)    (i) Except as provided in paragraph (3), a first offense under subsection (c) [distribution] or (d) [possession] is a felony of the third degree.

* * * *

(3)    When a person commits an offense graded under [subsection (c) or (d) and it is the first offense], the grading of the offense shall be one grade higher than the grade specified in paragraph (1) or (2)(i) if:

* * * *

(ii)    the child depicted is under 10 years or age or prepubescent.

18 Pa.C.S.A. § 6312(d.1).  "In the event a person involved in a prohibited sexual act is alleged to be a child under the age of 18 years, competent expert testimony shall be sufficient to establish the age of said person."  18 Pa.C.S.A. § 6312(e).  However, expert testimony is not always *required* to establish the age of the minor.  ***Commonwealth v. Robertson-Dewar***, 829 A.2d 1207, 1212 (Pa. Super. 2003).  "Rather, the outward physical appearance of an

_____

Puberty is the process of physical maturation where an adolescent reaches sexual maturity and becomes capable of reproduction.  Puberty is associated with emotional and hormonal changes, as well as physical changes such as breast development in females (thelarche), pubic hair development (pubarche), genital changes in males, voice changes, an increase in height, and the onset of menstruation (menarche).  ***See*** https://www.ncbi.nlm.nih.gov/books/NBK534827/

- 19 -

alleged minor may be considered by the trier of fact in judging the alleged minor's age." *Id.* Whether expert testimony is necessary to determine the age of the alleged minor is determined on a case-by-case basis. *Id.* This Court explained:

> [T]he legislature has vested the trier of fact with the function of determining the age of the child depicted and further allows for this element to be sufficiently established through competent expert testimony in close cases. This Commonwealth has long maintained that expert testimony is not required in obscenity prosecutions, and the determination is to be made on a case-by-case basis. Rather, we have consistently held since 1974 that printed publications and photographs themselves are enough evidence for a jury, in applying our statewide standard, to determine whether the average person would find the materials appealing to prurient interests. As in the case with determining obscenity . . . **we see no reason why the trier of fact based on everyday observations and common experiences cannot assess the age of the children** depicted with the requisite degree of certainty to satisfy the standard of proof beyond a reasonable doubt.

*Id.* at 1213 (emphasis added).

To increase the grading of the offense, the trier-of-fact must find that the minor child depicted in CSAM is either under 10 years of age **or** prepubescent. Here, Trooper Ballentyne was admitted as an expert in internet crimes against children and was asked only whether the minor child depicted appeared to be prepubescent in counts 9, 11, and 15.[11] **See** N.T. Trial,

---

[11] He was not asked whether the minor depicted in count 16 was prepubescent. *Id.* at 114-15.

5/4/23, at 108-110, 113-14. He was not asked whether the minor child depicted was under 10 years old.

During its charge, the trial court instructed the jury that it must determine whether the "child depicted is under 10 years of age or prepubescent." N.T. Trial, 5/5/23, at 43-44. The jury viewed each image and answered affirmatively on the verdict slip to the interrogatory for counts 9, 15 and 16 that the minor depicted in the CSAM was under 10 years of age or prepubescent. As the finder of fact, the jury was permitted to assess the age of the children depicted in the materials based on their everyday observations and common experiences. *See Robertson-Dewar, supra.* Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence for the jury to find that the contested images depicted a minor child under 10 years old or prepubescent. Thus, Appellant is not entitled to relief on this claim.

### C. **Indecent Contact – Counts 4, 6, 7, 8, 9, 11, 12, 13, 14 & 16**

Appellant claims that the Commonwealth failed to present sufficient evidence of indecent contact depicted in the CSAM in order to increase the grading of counts 4, 7, 9, 12, 14 and 16[12] in accordance with Section 6312(d.1)(3)(i). *See* Appellant's Brief, at 28-29. He contends that Trooper Ballentyne testified (1) that the CSAM was not indecent contact; (2) that he

---

[12] Based on our prior disposition, we once again will only address those counts that have not been reversed due to insufficient evidence of distribution.

did not know whether it was indecent contact; or (3) he was not asked whether it was indecent contact. *Id.* at 29. Appellant again cites **Bennett** for support, arguing that Trooper Ballentyne's testimony was so contradictory that the verdict was based on pure conjecture. *See id.* at 28. Additionally, Appellant asserts that the jury was not provided with the legal definition of indecent contact, yet answered affirmatively to the interrogatory whether indecent contact was depicted in the CSAM. *Id.*

Section 6312 provides for increased grading of the offense based on certain criteria being met:

> (3)    When a person commits an offense graded under [subsection (c) or (d) and it is the first offense], the grading of the offense shall be one grade higher than the grade specified in paragraph (1) or (2)(i) if:
>
>     (i)    indecent contact with the child as defined in section 3101 (relating to definitions)[13] is depicted.

18 Pa.C.S.A. § 6312(d.1)(3)(i).

We agree with Appellant that the Commonwealth failed to present sufficient evidence that the images in counts 4, 7, 9, 12, 14 and 16 depicted indecent contact. Trooper Ballentyne testified that the images in counts 1, 2, 15, 17, 18, 19, and 20 depicted indecent contact. N.T. Trial, 5/4/23, at 98, 101, 103, 105, 109, 113, 115-17. He was not asked whether the images in

---

[13] Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

counts 4, 9, 12, and 16 depicted indecent contact. *See id.* at 103-04, 108, 109-13, and 114. For count 14, Trooper Ballentyne testified that he would "need to review the definition" of indecent contact before he could say whether it was depicted in the image. *Id.* at 106, 113. For count 7, Trooper Ballentyne unequivocally testified that it did not depict indecent contact. *Id.* at 107.

Additionally, the jury was not provided with the definition of indecent contact. During its charge, the trial court instructed the jury that it also must determine whether the images depicted indecent contact, yet failed to provide the definition of that term:

> If you found each of these elements [of distribution] beyond a reasonable doubt you should find the defendant guilty. If you have so found you will then be asked to indicate on the verdict slip for each count whether you have also found beyond a reasonable doubt that the prohibited sexual act depicted was indecent sexual contact, or that the child depicted is under 10 years of age or prepubescent.

> \* \* \* \*

> If you have [found the defendant guilty of possession beyond a reasonable doubt], you will then be asked to indicate on the verdict slip for each count whether you have also found beyond a reasonable doubt that the prohibited sexual act depicted, or the simulated was indecent sexual contact, and that the child depicted is under 10 years of age, or prepubescent.

N.T. Trial, 5/5/23, at 43-44.

This instruction was insufficient to permit the jurors to increase the grading of the offenses. The jurors could not properly determine if there was sufficient evidence pursuant to Section 6312(d.1)(3)(1)(i) because the trial court did not define "indecent contact" as that term is defined under statute.

- 23 -

Even though the jury viewed the images, unlike with age, the jury was unable to assess whether the images depicted indecent contact based on their everyday observations and common sense because they were not provided with the statutory definition of indecent contact as that term is used in the offending statute. Accordingly, the grading of the offenses to a felony of the second degree at counts 4, 7, 9, 12, 14, and 16 based upon "indecent contact" cannot be sustained.[14] We vacate the judgment of sentence on those counts and remand for resentencing utilizing the correct grading of the offense, *i.e.*, felony of the third degree.

## III.   SENTENCING

We do not reach Appellant's last two issues wherein he challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing would have us assume the validity of the underlying convictions and their respective sentences. *See, e.g., Commonwealth v. Prinkey*, 277 A.3d 554, 563 (Pa. 2022) ("[B]ecause a conviction is the essential supporting infrastructure for a sentence, . . . 'illegality' with respect to the former extends to the latter as well. The alternative is for courts to accept as legal a sentence which is grounded upon an illegal conviction."). Since we are vacating some of the convictions, and finding fault with the grading of others, we are unable to address the current sentencing claim because the posture in which it is

---

[14] A first offense under Sections 6312(c) and (d) is graded as a felony of the third degree. *See* 42 Pa.C.S.A. § 6312(d.1)(1)(2)(i).

presented to us would have us assume that all convictions are valid, something that no longer is the case.

In sum, we conclude that the Commonwealth failed to present sufficient evidence to sustain the convictions at counts 3, 5, 6, 8, 10, 11, and 13, and failed to present sufficient evidence to increase the grading at counts 4, 7, 9, 12, 14, and 16. As our disposition upsets the overall sentencing scheme, we vacate the entire judgment of sentence and remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) ("If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan.").

Judgment of sentence vacated, convictions reversed at counts 3, 5, 6, 8, 10, 11 and 13, and case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judge Olson joins the memorandum.

Judge Bowes files a concurring and dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/30/2025

- 25 -